Mr. Justice ThacheR
delivered the opinion of the court.
This is an appeal from the decree of the superior court of chancery, dissolving an injunction.
The bill charges, that Ford'obtained' a final decree in the court of chancery, in June, 1844, foreclosing a mortgage executed by Conger to Hughes on the 4th day of December, 1838, and which Hughes had assigned to Ford; that the orators, Samuel Herman & Son, recovered a judgment against Hughes in Claiborne county,' ■on the 8th day of December, 1837, which was bonded, and the bond forfeited on the fourth Monday of May, 183S; that David Gibson obtained a judgment against said Hughes in Claiborne county, on the 4th day of December, 1837, which was bonded, *529 and bond forfeited on the fourth Monday of November, 1838, which judgment was assigned for a full and valuable consideration to the Planters’ Bank of Tennessee; that these judgments are unsatisfied; that they were regularly enrolled on the judgment roll of the circuit court of Claiborne county, prior to the 1st day of July, 1844; that the land and negroes described in the mortgage, or most of the latter, were own.ed by Hughes at the date of the rendition of the judgments, and that a large number of the negroes were certainly in said county prior to the 3d day of December, 1838, at which time they were sold by Hughes to Conger; that Hughes is insolvent, and the land waste and worthless, &c. &c. Upon this bill an injunction was granted, restraining the sale under the decree in favor of Ford.
Ford answered the bill and charged, that Herman & Son had filed their petition to be declared bankrupts under the act of congress, and, as he believes, had been so decreed, and were not entitled to maintain the suit, not having scheduled their debt; that in December, 1838, Conger bought of Hughes a large number of negroes, being the same mentioned in the mortgage, the greater part of which were then, on the plantation of Hughes in Arkansas, and they were brought by Conger from Arkansas, and landed at his plantation in the Mississippi river; that he had understood that Hughes had some negroes, nearly forty in number, working on the railroad in Claiborne county, in 1837, but the whole of said negroes were not sold to Conger ; that part of the negroes, that had been working on the railroad and were sold to Conger, were removed by Hughes to Arkansas previous to the sale to Conger, and were there when so sold, and were not subject to the lien of the judgment of the Planters’ Bank of Tennessee, if any such subsisted, and did not become so upon their return to Mississippi as Conger’s property; that all the negroes sold by Hughes to Conger, except eight or ten, were in Arkansas at the time of the sale; that the said judgment of the Planters’ Bank of Tennessee was not regularly and legally enrolled, and that its judgment upon the forfeited forthcoming bond was not enrolled previously to the 1st day of June, 1844; that said Conger, upon removing the negroes from Arkansas to , this state, *530 placed them on his plantation in Warren county, where they remained for several years; and that said judgment of the Planters’ Bank, or an abstract thereof, was not recorded in said county, according to the act of 1841, as in such case provided.
Afterwards Ford filed an amended answer, and charged, that on the 8th day of January, 1838, Hughes executed a deed of trust in the state of Arkansas, upon certain slaves then there, to Parker, trustee for the Grand Gulf Bank, to secure a debt to the ■bank, and at the same time delivered the slaves to that bank’s agent, who brought them to this state, and placed them at work upon the railroad; that by arrangement between Conger, Hughes and the bank, after Hughes sold them to Conger, Conger was permitted to take them into possession, and by afterwards satisfying the debt of Hughes to the bank, he became subrogated to all the rights of the bank created by the deed of trust; that on the 24th day of January, 1838, Hughes executed a deed of mortgage to said bank, confirming the former deed of trust, both of which deeds were duly recorded in Claiborne county, upon the arrival of the slaves in that county.
It was admitted that Herman & Son had applied for a discharge, and had been discharged as bankrupts under the act of congress, and had not returned the claim set up by them in the bill in their schedule of assets.
But little need be said as to the claim set up by Herman & Son, in this bill. It presents the case of bankrupts seeking to recover satisfaction of a judgment which they had failed to enumerate in the list of their assets, and a court of chancery will not give aid in such an undertaking. If any one be entitled to recover, it is their assignee, and the claim should be prosecuted by him. Bankrupt Act, sec. 3.
The judgment obtained by David Gibson on the 4th day of December, 1837, against Hughes, was duly enrolled on the 12th day of June, 1844; but this judgment was extinguished by the forfeiture of the forthcoming bond executed thereon, and which was forfeited on the fourth Monday of November, 1838. The judgment, however, upon this forthcoming bond forfeited, *531 was not enrolled until the 29th day of November, 1844. In regard to this circumstance, the record contains the affidavit of the clerk of the circuit court of Claiborne county, who states, that the failure to enroll this judgment at the time the first judgment was enrolled, was his own omission, and that he was requested so to do, and his fees paid for that purpose, by the plaintiff’s attorney.
The act of February 24, 1844, entitled “ An act to amend an act, entitled an act to regulate the liens of judgments and decrees, approved the 16th of February, 1841, and for other purposes,” makes it the duty of the clerks of the several circuit courts to enter judgments and decrees in the judgment roll upon the application of a plaintiff, his agent, or attorney. The statute farther provides, upon the failure of a clerk so to enroll, that he shall forfeit and pay, to the party making the application, the sum of five hundred dollars, to be recovered in an action of debt, and besides shall be liable, in an action upon the case, for all damages occasioned by such failure or neglect; and shall furthermore be guilty of a misdemeanor in office, and upon conviction thereof shall be subject to imprisonment for not less than ten, nor more than thirty days. And the statute expressly provides, that judgments and decrees shall cease to operate as liens upon any property of the defendants, until the same shall be entered in the judgment roll, and that the liens shall be from such enrolment, instead of from- the rendition of the judgments and decrees. The act is positive, and makes the lien to depend absolutely upon the due enrolment of the judgment. It provides well for any plaintiff, in the event of a neglect or omission upon the part of a clerk, to make the enrolment. This statute is widely different from that of Virginia, in relation to the recording of deeds, entitled “An act regulating conveyances.” That act simply requires the instrument to “ be lodged with the clerk of such court, to be recorded.” The case of Beverly v. Ellis & Allan, 1 Rand. 102, is not in point in this cause, on account of the wide difference in the statutes, and because in that case, as we gather from the report and opinion of the court, the appellees had that constructive notice of the prior right of the appellant to *532 the land sold under the deed of trust which that act affords to subsequent purchasers, when its provisions are complied with. We pe not, therefore, required to intimate our opinion of the correctness of that decision. Under our statute, an inspection of the judgment roll is the sole means of supplying to those interested, notice of the liens of judgment, and we hold that unless a judgment be enrolled, the lien is lost, and can date only from the time of enrolment. The lien of the judgment, therefore, upon the forfeited forthcoming bond of Hughes, took effect only from the 29th day of November, 1844. This was long subsequent to the date of the mortgage executed by Conger to Hughes, and assigned to Ford, and subsequent also to the date of Ford’s decree.
It was unnecessary for Ford to cause his decree to be enrolled. The decree created no lien, and the enrolment could preserve none. The lien arose by virtue of the mortgage, and it could not be defeated by an omission to cause a decree of foreclosure upon it to be recorded. It is not such a decree as is contemplated by the act.
The point made in argument, that a portion of the slaves were introduced into this state by Hughes as merchandise, and for hire, is not fully sustained by the evidence, nor warranted by the law upon the facts. The deed of trust upon them was executed in Arkansas, and they were there delivered to the agent of the Grand Gulf Bank. They were brought by that agent into this state, and placed at work upon the railroad. Hughes was to be allowed an amount per annum for their hire, but this followed as a matter of course, upon their delivery after the execution of the deed of trust. The act was done by the bank. They were brought into this state for its use. It is clearly not, in the state of the proof, an infraction of the constitutional law, regulating the introduction of slaves into the state as merchandise. Hope v. Evans, 4 S. & M. 321.
But these latter points cannot be set up by Gibson. The last, indeed, would equally militate against him as against Conger or Ford. The court could make no final decree for him. 6 S. & M. 624. Until Gibson had established a lien, he could not *533 properly receive benefit upon the first ground ; and we see that his lien had been lost by his own laches.
Thus, upon full examination, the decree of the chancellor dissolving the injunction must be affirmed, and the cause remanded.